# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN J. RICHSON-BEY,<br><br>            Plaintiff,<br><br>   vs.<br><br>WATROUS, et al.,<br><br>            Defendants | **1:21-cv-01482-AWI-GSA-PC**<br><br>**<u>SCREENING ORDER</u>**<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND (ECF No. 15.)**<br><br>**ORDER DENYING PLAINTIFF'S MOTIONS TO SUPPLEMENT THE COMPLAINT (ECF Nos. 14, 16.)**<br><br>**THIRTY-DAY DEADLINE TO FILE A SECOND AMENDED COMPLAINT** |

## I.   BACKGROUND

Plaintiff, Sean J. Richson-Bey, is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on October 5, 2021.  (ECF No. 1.)  On May 16, 2022, Plaintiff filed a motion to file supplemental pleadings pursuant to Rule 15(d) of the Federal Rules of Civil Procedure.  (ECF No. 14.)  On June 13, 2022, Plaintiff filed the First Amended Complaint as a matter of course.  (ECF No. 15.)  On June 21, 2022, Plaintiff filed another motion to file supplemental pleadings pursuant to Rule 15(d) of the Federal Rules of Civil Procedure.  (ECF No. 16.)

Plaintiff's First Amended Complaint is now before the Court for screening.  28 U.S.C §
1915.

## II.    SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a
governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The
court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally
"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek
monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).
"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall
dismiss the case at any time if the court determines that the action or appeal fails to state a claim
upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that
the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not
required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell
Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken
as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores,
Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state
a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service,
572 F.3d 962, 969 (9th Cir. 2009).  While factual allegations are accepted as true, legal
conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this
plausibility standard.  Id.

## III.    SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at Salinas Valley State Prison in Soledad, California.
The events at issue in the First Amended Complaint allegedly occurred at Corcoran State Prison
in Corcoran, California, when Plaintiff was incarcerated there in the custody of the California
Department of Corrections and Rehabilitation.  Plaintiff names as defendants Correctional

Officer (C/O) E. Watrous, C/O L. Mora, C/O Rendon, C/O Cooper, and Lieutenant M. Grenseal (collectively, "Defendants").  A summary of Plaintiff's allegations follows:

On April 14, 2021, while performing an assignment as Clerk to a 3C Facility third-watch Sergeant, Plaintiff entered 3C03 Housing Unit vestibule to be notified of routine cell searches for inclusion in the Daily Activity Report.  Plaintiff was met by 3C03 Floor Officers, Defendants C/O Watrous and C/O L. Mora.  Defendant Watrous retrieved and provided the searches to Plaintiff before requesting Plaintiff to submit to a cursory search.  Plaintiff complied.  Defendant Watrous then requested Plaintiff to disrobe for an unclothed body search, whereby Plaintiff objected for cause.  Defendant Watrous recounted some previous event at which time he resolved to inconvenience Plaintiff at a future encounter "to make a point."  ECF No. 15 at 3:8-9.

Defendant Watrous instructed Officer Mosqueda [not a defendant] to secure the door to the housing unit, then stated, "You're not leaving until you comply," before ordering Plaintiff to disrobe again.  Id. at 3:11-12.  Plaintiff refused and requested that the Sergeant-supervisor be contacted, then moved away from the vestibule entrance.  Plaintiff was ordered to stop by both officers, and defendant Mora requested Plaintiff to submit to a cursory search.  Plaintiff indicated the previous search by Watrous, to which Mora responded, "Now I'm asking."  Id. at 3:21.  Plaintiff complied.  Then Mora ordered Plaintiff to disrobe for an unclothed body search.  Plaintiff protested and Mora retorted, "Because I'm asking you to."  Id. at 3:23-24.

Plaintiff was ordered into "Lower-B" and secured there for approximately thirty minutes until Security & Escort Officers defendants Rendon and Cooper responded.  Id. at 3:25.  Plaintiff was placed in mechanical restraints, removed from the Lower-B section shower, and escorted by Officers Rendon and Cooper to 3C Facility Program Office, a vacant holding room where Plaintiff was ordered to remove his shoes, still in restraints, prior to placement into the holding cell.  Plaintiff asked why and Defendants Rendon and Cooper, and a third officer, placed Plaintiff against the wall and forcibly removed his shoes and socks.  Defendant Rendon rubbed his hand across Plaintiff's bare feet one by one, then secured Plaintiff in the holding cell.  Upon exiting, Rendon exclaimed, "Now that's how you shoe a horse!"  Plaintiff remained there for about an

///

hour, barefoot and mechanically restrained, before he was released and ordered to return to the housing unit.

On April 27, 2021, Plaintiff was issued a false Rules Violation Report (RVR) authored by Defendant Watrous for Delaying a Peace Officer in the Performance of Duties in retaliation for Plaintiff's refusal of the unclothed body search.

On May 11, 2021, Plaintiff appeared before Senior Hearing Officer Grenseal for adjudication of the RVR. As Senior Executive Officer, 3C Facility, and post-commander at the time of the incident, to whom rank and file officers reported and conferred, Defendant Grenseal was not competent to adjudicate the RVR as an impartial fact-finder. Defendant Grenseal thwarted Plaintiff's ability to defend against the allegation against Plaintiff by denying witnesses and documentary evidence and disregarding the California Code of Regulations, stating, "When my officers say do something, you do it." Id. at 5:2. Plaintiff was found guilty and assessed 30 days loss of credits and additional administrative restrictions.

Plaintiff requests monetary damages, including punitive damages, and costs of suit.

## IV.   PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law

///

4

amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A.    **Retaliation – First Amendment Claim**

Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see also Short v. Sanzberro, No. 1:09-cv-00996-OWW-GSA PC, 2009

WL 5110676, at *5 (E.D. Cal. Dec. 18, 2009) ("Civil detainees are protected from retaliation by the First Amendment."); see Herrick v. Quigley, No. 3:15-cv-05016-RBL-KLS, 2016 WL 7324288, at *9 (W.D. Wash. Nov. 2, 2016) ("Retaliation is not proven by simply showing that a defendant . . . took adverse action after he knew that the plaintiff prisoner had engaged in constitutionally protected activity.")

The First Amendment protects the right of a prisoner to file a prison grievance against prison officials. Rangel v. LaTraille, No. 1:10-CV-01790-AWI, 2014 WL 4163599, at *8–9 (E.D. Cal. Aug. 20, 2014), report and recommendation adopted, No. 1:10-CV-01790-AWI, 2014 WL 5483752 (E.D. Cal. Oct. 29, 2014) (citing Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir.2003). However, protests that involve direct confrontation with prison officials enjoy limited constitutional protection due to the danger of a prison disturbance. Id. (citing Nunez v. Ramirez, 2010 WL 1222058, *5–6 (S.D.Cal. Mar.24, 2010); Johnson v. Carroll, 2012 WL 2069561, *34 (E.D.Cal. Jun.7, 2012) (findings and recommendations finding that prisoner's verbal challenge to search was not protected by First Amendment; prisoner's recourse for challenging search was to file an administrative grievance), adopted in full by Johnson v. Carroll, 2012 WL 3756483 (E.D.Cal. Aug.28, 2012)).

Even if characterized as a protest, a refusal to comply with a direct order is not subject to First Amendment protection. Id. (citing see, e.g., Cauthen v. Rivera, 2013 WL 1820260, *8–9 (E.D.Cal. Apr.30, 2013) (objection to outdoor search characterized by prisoner as a grievance by way of peaceful protest not protected; prisoner's conduct was an objection to a direct order in face-to-face confrontation and did not state a claim for retaliation).

Here, it is undisputed that Plaintiff's protest was a direct, face-to-face confrontation with prison officials and that Plaintiff refused to comply with repeated orders to submit to an unclothed body search.  Plaintiff's refusal to comply with orders is not protected conduct under the First Amendment.  Id.  Inmates do not get to decide which orders they will obey and when they will obey them. Id. (citing Soto, 744 F.2d at 1267).

Assuming arguendo that Plaintiff's refusal to comply was considered protected conduct, Plaintiff has not shown that Defendants' conduct failed to reasonably advance a legitimate

penological purpose.  <u>See</u> <u>Id.</u>  The California Department of Corrections and Rehabilitation's regulations prohibit conduct that disrupts the operation of the institution.  Specifically, the regulations provide as follows: "Inmates . . . will not openly display disrespect or contempt for others in a manner intended to or reasonably likely to disrupt orderly operations within the institutions or to incite or provide violence."  <u>Id.</u> (quoting  Cal.Code Regs., tit. 15 § 3004(b)).  Institutional security is a legitimate correctional goal.  <u>Id.</u> (citing <u>Nevada Dep't of Corr. v. Greene</u>, 648 F.3d 1014, 1018 (9th Cir. 2011)).

Also, importantly, Plaintiff has not established a nexus between adverse actions by Grenseal and Plaintiff's conduct in refusing the unclothed body search.  Although Plaintiff claims that he was retaliated against, he has failed to demonstrate a causal nexus between the alleged retaliation and any constitutionally protected activity, showing that the retaliatory act was done *because* of the protected activity.  The mere statement that Defendants "retaliated" against him or acted "in retaliation" is not sufficient to state a claim.

For these reasons, Plaintiff fails to state a claim for retaliation against any of the Defendants.

**B.      Due Process**

The Due Process Clause protects against the deprivation of liberty without due process of law.  <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005).  In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  <u>Id.</u>  Liberty interests may arise from the Due Process Clause itself or from state law.  <u>Id.</u>

The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation.  <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466-68 (1983); <u>see also</u> <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within

range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir. 2003). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." Id. These procedural protections, however, "adhere only when the disciplinary action implicates a protected liberty interest . . . ." Id. (citations omitted).

Plaintiff does not have a protected liberty interest in the loss of good time credits. Gibbs v. Sanchez, No. CV 16-9013-RGK (PLA), 2019 WL 3059579, at *7 (C.D. Cal. Apr. 26, 2019), report and recommendation adopted, No. CV 16-9013-RGK (PLA), 2019 WL 4266518 (C.D. Cal. June 21, 2019) (quotation marks omitted). To be sure, following Sandin, the Ninth Circuit has held that a state can create a protected liberty interest in a shortened prison sentence resulting from the loss of good time credits. Id. (quotation marks omitted) (citing see, e.g., Gotcher v. Wood, 66 F.3d 1097, 1100 (9th Cir.1995), vacated and remanded on other grounds, 520 U.S. 1238, 117 S. Ct. 1840, 137 L.Ed. 2d 1045 (1997); see also Wolff, 418 U.S. at 557 (holding that inmate who faces loss of state-created liberty interest such as good time credits is entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated")).

However, where, as here, a prisoner is serving a life sentence,[1] "the loss of credits has never been held as a protectable liberty interest because the effect of the state action on the inmate's sentence is a key component of the [Sandin] inquiry, and a loss of credit has no effect on a life sentence." Gibbs 2019 WL 3059579, at *6 (quoting Davis v. Gonzalez, 2014 WL 658084, at *10 (C.D. Cal. Feb. 12, 2014); see also Sandin, 515 U.S. at 487 ("Nor does [the prisoner's] situation present a case where the State's action will inevitably affect the duration of his sentence.")).

As for the additional administrative restrictions imposed on Plaintiff as part of his guilty conviction, Plaintiff has not alleged any facts demonstrating that they imposed an atypical or significant hardship on him.  Moreover, the Supreme Court has concluded that prisoners have no liberty interest in not losing privileges. See Baxter v. Palmigiano, 425 U.S. 308, 323, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

Based on the foregoing, the Court finds that Plaintiff has failed to establish the existence of a liberty interest for which due process protection is sought, and therefore Plaintiff fails to state a claim for violation of due process.  Plaintiff shall be granted leave to file an amended complaint to cure the deficiencies in this claim.

## C.     **False Reports**

Plaintiff alleges that Defendants wrote false reports against him.  These allegations, even if true, do not raise a constitutional claim because there is no due process right to be free from false disciplinary charges.  The falsification of a disciplinary report does not state a standalone constitutional claim.  Canovas v. California Dept. of Corrections, 2:14-cv-2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); see e.g., Lee v. Whitten, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012).  Prisoners do not have a liberty interest in being free from false accusations of misconduct.  This means that the falsification of a report, even when intentional, does not alone give rise to a claim under § 1983.  Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or

---

[1] On December 2, 2021, Plaintiff notified the Court in his response to the Court's order to show cause that he is serving an indeterminate term of twenty-six years to life. (ECF No. 10 at 2:16-22.)

wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); Buckley v. Gomez, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (stating that "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports[ ]").

Therefore, Plaintiff has no protected liberty interest against false information being reported against him, and he fails to state a claim based on false reports against him.

**D.    Violations Of State Prison Rules**

Plaintiff alleges that Defendant Grenseal disregarded the California Code of Regulations Plaintiff when he officiated at Plaintiff's disciplinary hearing.   Violations of state prison rules and regulations, without more, do not support any claims under § 1983. Ove v. Gwinn, 264 F.3d 817, 824 (9th Cir. 2001); Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997). Only if the events complained of rise to the level of a federal statutory or constitutional violation may Plaintiff pursue them under § 1983.   Patel v. Kent School Dist., 648 F.3d 965, 971 (9th Cir. 2011); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Moreover, because Plaintiff has not cited any individual regulations at issue in the First Amended Complaint, it cannot be determined whether a private right of action was created. See Thurman v. Bayshore Transit Mgmt., Inc., 203 Cal.App.4th 1112, 138 Cal. Rptr. 3d 130, 146-47 (2012), *abrogated on other grounds by* ZB, N.A., and Zions Bancorporation v. Superior Court, 8 Cal.5th 175, 252 Cal.Rptr.3d 228, 448 P.3d 239 (2019) (statutory language or legislative history must clearly indicate an intent to create a private right of action)."   Nible v. Fink, No. 19-55890, 828 F. App'x 463, 2020 WL 6441171, at *1 (9th Cir. Nov. 3, 2020) (unreported).

Therefore, Plaintiff fails to state a claim for violation of the California Code of Regulations.

**E.    Unclothed Body Search**

Prisoners and pretrial detainees in institutional settings may be subjected to strip searches and body cavity searches if they are conducted in a reasonable manner.   See Bell v. Wolfish, 441 U.S. 520, 561, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).   The United States Supreme Court and the Ninth Circuit have held that routine visual strip searches do not unreasonably infringe on

prisoners' constitutional rights.  <u>Florence v. Board. of Chosen Freeholders</u>, 566 U.S. 318, 328 (2012) (upheld, under the Fourth Amendment, a blanket strip search and visual body cavity search for detainees entering detention facilities to detect and deter contraband); <u>Bell</u>, 441 U.S. at 558-60 (found visual body cavity searches conducted after contact visits used to prevent prisoners' possession of weapons and contraband, even absent probable cause, reasonable under the Fourth Amendment); <u>Michenfelder v. Sumner</u>, 860 F.2d 328, 333-34 (9th Cir. 1988) (held that routine visual body cavity searches conducted in hallways did not violate the Fourth Amendment after situations where inmates had been presented with the opportunity to obtain contraband or a weapon); <u>Rickman v. Avaniti</u>, 854 F.2d 327 (9th Cir. 1988) (upheld prison policy requiring visual strip and body cavity searches every time administrative segregation prisoners left their cells).

The Fourth Amendment prohibits only unreasonable searches.  <u>Bell</u>, 441 U.S. at 558; <u>Byrd v. Maricopa Cnty. Sheriff's Dep't</u>, 629 F.3d 1135, 1140 (9th Cir. 2011), *cert. denied*, 131 S.Ct. 2964 (2011); <u>Michenfelder</u>, 860 F.2d at 332.   The reasonableness of the search is determined by the context, which requires a balancing of the need for the particular search against the invasion of personal rights the search entails.  <u>Bell</u>, 441 U.S. at 558-59 (quotations omitted); <u>Byrd</u>, 629 F.3d at 1141; <u>Bull v. City and Cnty. of San Francisco</u>, 595 F.3d 964, 974-75 (9th Cir. 2010); <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1227 (9th Cir. 2010); <u>Michenfelder</u>, 860 F.2d at 332-34.  Factors that must be evaluated are the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.  <u>Bell</u>, 441 U.S. at 559 (quotations omitted); <u>Byrd</u>, 629 F.3d at 1141; <u>Bull</u>, 595 F.3d at 972; <u>Nunez</u>, 591 F.3d at 1227; <u>Michenfelder</u>, 860 F.2d at 332.

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976) (citation omitted).   A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that

the prison official has a "sufficiently culpable state of mind." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (citation omitted).

Here, Plaintiff's Fourth and Eighth Amendment claims fail because Defendants did not conduct an unclothed body search.  Plaintiff was ordered to disrobe for an unclothed body search but he objected and refused to disrobe.  Since Plaintiff was not subjected to *any* unclothed body search, there was no unreasonable body search in violation of the Fourth Amendment.

Plaintiff has not shown that he suffered any serious harm by being ordered to submit to an unclothed body search and therefore fails to state an Eighth Amendment claim.  A deprivation of "peace of mind" does not support a constitutional claim. <u>Keenan v. Hall</u>, 83 F.3d 1083, 1092 (9th Cir.1996), and moreover, a mere threat to do an unconstitutional act does not create a constitutional wrong.  <u>Gaut v. Sunn</u>, 810 F.2d 923, 925 (9th Cir. 1987).  Finally, a prisoner may not bring a civil action for emotional or mental injury that he suffered while in custody without showing a physical injury. 42 U.S.C. § 1997e(e); <u>Oliver v. Keller</u>, 289 F.3d 623, 630 (9th Cir. 2002).

Therefore, Plaintiff fails to state a Fourth or Eighth Amendment claim based on Defendants' conduct in ordering him to submit to an unclothed body search.

## V.   RULE 15(d) – SUPPLEMENTAL PLEADINGS

On May 16, 2022 and June 21, 2022, Plaintiff filed motions to supplement the complaint. (ECF Nos. 14, 16.)

Federal Rule of Civil Procedure 15(d) provides for supplemental pleadings as follows:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d).

"Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed." <u>Doe v. Butte Cnty. Prob. Dep't</u>,

///

1  No. 220CV02248TLNDMC, 2022 WL 705616, at *2 (E.D. Cal. Mar. 9, 2022) citing <u>Cabrera v.</u>

2  <u>City of Huntington Park</u>, 159 F.3d 374, 382 (9th Cir. 1998) (per curiam)).

3      A party may only file a supplemental complaint with leave of court.  Fed. R. Civ. P. 15(d).

4  "In deciding whether to permit a supplemental pleading, a court's focus is on judicial

5  efficiency."  <u>Id.</u> (quoting <u>Yates v. Auto City 76</u>, 299 F.R.D. 611, 613 (N.D. Cal. 2013)

6  (citing <u>Planned Parenthood of S. Az. v. Neely (Neely)</u>, 130 F.3d 400, 402 (9th Cir. 1997)). The

7  use of supplemental pleadings is "favored" because it enables a court to award complete relief in

8  one action "to avoid the cost, delay and waste of separate actions which must be separately tried

9  and prosecuted."  <u>Id.</u> (quoting <u>Keith v. Volpe</u>, 858 F.2d 467, 473 (9th Cir. 1988) (citing <u>New</u>

10  <u>Amsterdam Cas. Co. v. Waller</u>, 323 F.2d 20, 28–29 (4th Cir. 1963), cert. denied, 367 U.S. 963

11  (1964); <u>Yates</u>, 299 F.R.D. at 613 (citation omitted)).  However, even though supplemental

12  proceedings are "favored," they "cannot be used to introduce a separate, distinct, and new cause

13  of action."  <u>Id.</u> (citing <u>Neely</u>, 130 F.3d at 402 (citations omitted)).  Rather, matters newly alleged

14  in a supplemental complaint must have "some relation to the claims set forth in the original

15  pleading."  <u>Id.</u> (quoting <u>Keith</u>, 858 F.2d at 474.

16      "The legal standard for granting or denying a motion to supplement under Rule 15(d) is

17  the same as the standard for granting or denying a motion under Rule 15(a)."  <u>Id.</u> (quoting <u>Yates</u>,

18  299 F.R.D. at 614.)  Courts commonly apply the five <u>Foman</u> factors to Rule 15(d) motions: (1)

19  undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure of

20  previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the

21  amendment.  <u>Id.</u> (citing <u>Lyon v. U.S. Immigr. & Customs Enf't</u>, 308 F.R.D. 203, 214 (N.D. Cal.

22  2015) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)); <u>Natural Resources Defense Council v.</u>

23  <u>Kempthorne</u>, No. 1:05-cv-01207-LJO GSA, 2016 WL 8678051 (E.D. Cal. Apr. 22, 2016)).

24  Among these five factors, "it is the consideration of prejudice to the opposing party that carries

25  the greatest weight."  <u>Id.</u> (quoting <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052

26  (9th Cir. 2003)).  "Absent prejudice or a 'strong showing' of any other <u>Foman</u> factor, there is a

27  presumption in favor of granting leave to supplement."  <u>Id.</u> (quoting <u>Lyon</u>, 308 F.R.D. at 214

28  (citing <u>Eminence Capital, LLC</u>, 316 F.3d at 1052)).  Supplementation should be permitted where

1  doing so would serve Rule 15(d)'s goal of judicial efficiency, and a court should assess whether

2  an entire controversy can be settled in one action.  Id. (citing see Neely, 130 F.3d at 402).

3      A.      **Plaintiff's Motions (ECF No. 14, 16.)**

4          Plaintiff proposes adding several more Defendants and new claims to the complaint based

5  on events that occurred after the original Complaint was filed.  Plaintiff seeks to add defendants

6  Ken Clark (Warden), Sergeant R. Rivera, C/O E. Puga, C/O M. Liddle, C/O A. Luviano-

7  Martinez, and Sergeant Brazelton.  A summary of Plaintiff's proposed supplemental allegations

8  and claims follow:[2]

9          On May 11, 2021, Plaintiff filed an administrative grievance regarding

10         matters concerning the instant action.  Since that time, Defendant Grenseal,

11         Facility 3C third-watch post commander, has administered a continuous campaign

12         of retaliation and harassment, unimpeded by Defendant Clark despite notice of

13         Plaintiff's numerous administrative grievances.

14         Commencing May 24, 2021, according to Floor Officers Craig and

15         Sanchez, Plaintiff was prohibited from attending assignment as Clerk to a third-

16         watch Sergeant without prior approval.  On or about June 24 or 29, 2001, Plaintiff

17         encountered the assignment supervisor, then third-watch Sergeant Garza, who

18         told Plaintiff he understood that Plaintiff had been refusing assignment.  Garza

19         expressed ignorance of Officers Craig and Sanchez's allegations, adding, "They

20         may be acting under order of the Lieutenant," i.e. Grenseal.

21         On November 9, 2021, Plaintiff was summoned by Defendant Puga, who

22         issued a false Rules Violation Report for Plaintiff's failure to meet work

23         expectations.  (Plaintiff was working as Clerk to Defendant Rivera and was tasked

24         with recording cell search information.)  After the 4:30pm institutional count,

25         Plaintiff was released for his work assignment and reported to the Facility 3C

26         Program Office to announce his attendance, but he was informed that Defendant

27         _____

28         [2] This summary reflects the proposed supplemental allegations by Plaintiff found in his two
motions to supplement the complaint, filed on May 16, 2022 and June 24, 2022.  (ECF Nos. 14, 16.)

Rivera was out touring Housing Units.  Plaintiff commenced pursuit of Rivera at Housing Unit 2.  Defendant Floor Officer Liddle told Plaintiff that Rivera was not there.  Plaintiff intercepted Defendant Rivera on his way back to the Program Office.  Based on reports from Defendant Puga, Rivera terminated Plaintiff's evening assignment.  Plaintiff was thereafter issued a second false RVR by Defendant Liddle for "Out of Bounds."

On November 14, 2021, Plaintiff was found guilty of both RVRs by Defendant Rivera who acted as Senior Hearing Officer (SHO).  Plaintiff was not present because he had commenced a 21-day quarantine for refusing a Covid test.  Rivera was incompetent to act a SHO at the hearing because of his connection with persons, issues, events, etc. surrounding the adjudication.  Rivera requested termination of Plaintiff's work assignment, and the request was granted on December 16, 2021.

On March 20, 2022, Defendant Luviano-Martinez came to Plaintiff's cell to execute a random cell search.  Plaintiff exited the cell and complied with instructions to enter the "Lower B" shower.  Defendant Luviano-Martinez requested Plaintiff to submit to an unclothed body search.  Plaintiff objected and was taken to the Program Office where Defendant Brazelton conducted an unclothed body search of Plaintiff.  Plaintiff was issued an RVR for Willingly Delaying a Peace Officer in the Performance of Duty.

On April 26, 2022, Defendant Grenseal, as SHO, found Plaintiff guilty of the RVR.  Grenseal was incompetent as SHO because he had ordered the RVR to be issued  and because of his ongoing hostility toward Plaintiff due to Plaintiff's exercise of administrative remedy.  Also, Defendant Grenseal's disregarded the California Code of Regulations.  Grenseal cited body cam footage as evidence of guilt, which was not viewed in Plaintiff's presence in disregard of CCR § 3287(b).  Plaintiff was assessed 90 days credit loss, 60 days privilege Group C, loss of phone, dayroom, yard, canteen privileges, and property restrictions.

Plaintiff seeks to bring new claims for retaliation under the First Amendment, issuance of false RVRs under the Eighth Amendment, failure to protect in violation of the Eighth Amendment, violation of due process, unreasonable search under the Fourth and Eighth Amendments, and adjudication of RVR in violation of the Fifth and Sixth Amendments.

**B.   <u>Discussion</u>**

As discussed above, Federal Rule of Civil Procedure 15(d) is a tool of judicial economy and convenience, and the Court finds that these interests would not be served by allowing Plaintiff to supplement his complaint here.

The proposed supplemental pleading concerns events and defendants that are distinct from the claims in the First Amended Complaint. Plaintiff does attempt to connect the claims by alleging that he was retaliated against for a grievance he filed on May 11, 2021, which was before he filed this lawsuit.   However, the proposed supplements assert claims based on completely different facts.

Plaintiff's First Amended Complaint brings claims for events beginning on April 14, 2021 against defendants Watrous, Mora, Rendon, Cooper, and Grenseal for retaliation, due process violations, false reports, unreasonable unclothed body search, and violation of the California Code of Regulations. The only Defendant named in both the First Amended Complaint (FAC) and the proposed supplement is Defendant Lieutenant Grenseal, for retaliation against Plaintiff. However, the alleged retaliation by Defendant Grenseal in the proposed supplement is not a continuation of the retaliation in the FAC. Plaintiff alleges in the FAC that Defendant Grenseal retaliated against him for refusing to disrobe for an unclothed body search, whereas in the supplement, Grenseal allegedly retaliated against Plaintiff because he filed a grievance on May 11, 2021. Although Defendant Grenseal is the same Defendant who allegedly retaliated against Plaintiff in both instances, the two allegations of retaliation are distinctly different in time and based on different events. Importantly, by this order the Court is dismissing the retaliation claim against Defendant Grenseal found in the FAC, for Plaintiff's failure to establish that he was retaliated against because of conduct protected under the First Amendment. Thus, Plaintiff's

proposed new claims are based on completely different facts against completely different defendants, and allowing these claims to proceed in one suit would not serve judicial economy or convenience.

Based on the foregoing, the Court finds that judicial economy and convenience would not be served by allowing Plaintiff to supplement his complaint. Accordingly, the Court shall deny Plaintiff's motions to supplement the complaint, without prejudice to Plaintiff asserting the proposed claims in a separate lawsuit.

## VI.   CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims in the First Amended Complaint against any of the Defendants. Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Plaintiff shall be granted leave file a Second Amended Complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named Defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. at 678; Jones, 297 F.3d. at 934. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each Defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues. Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on October 10, 2021.

Plaintiff is advised that an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012), and it must be complete in itself without reference to the prior or superseded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore,

in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Based on the foregoing, the court finds that Plaintiff fails to state any cognizable claims in the First Amended Complaint upon which relief may be granted under § 1983;

2. Plaintiff's First Amended Complaint is dismissed for failure to state a claim, with leave to amend within **thirty (30) days** from the date of service of this order;

3. Plaintiff's motions to supplement the complaint, filed on May 16, 2022 and June 21, 2022, are denied, without prejudice to Plaintiff asserting the proposed claims in a separate lawsuit.

4. The Clerk's Office shall send Plaintiff a civil rights complaint form;

5. Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:21-cv-01482-AWI-GSA-PC; and

6. Plaintiff's failure to comply with this order shall result in a recommendation that this case be dismissed.

IT IS SO ORDERED.

Dated:   __October 24, 2022__                    _____ **/s/ Gary S. Austin**
                                                 UNITED STATES MAGISTRATE JUDGE

18