# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

SEAN J. RICHSON-BEY,

         Plaintiff,

   vs.

WATROUS, et al.,

         Defendants

**1:21-cv-01482-JLT-GSA-PC**

**ORDER DENYING PLAINTIFF'S MOTION TO SUPPLEMENT THE SECOND AMENDED COMPLAINT**

**(ECF No. 23.)**

   **AND**

**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM**

**OBJECTIONS, IF ANY, <u>DUE ON OR BEFORE JUNE 27, 2023</u>**

## I.     BACKGROUND

      Plaintiff, Sean J. Richson-Bey, is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on October 5, 2021.  (ECF No. 1.)  On May 16, 2022, Plaintiff filed a motion to file

supplemental pleadings pursuant to Rule 15(d) of the Federal Rules of Civil Procedure.  (ECF No. 14.)  On June 13, 2022, Plaintiff filed the First Amended Complaint as a matter of course. (ECF No. 15.)  On June 21, 2022, Plaintiff filed another motion to file supplemental pleadings pursuant to Rule 15(d) of the Federal Rules of Civil Procedure.  (ECF No. 16.)

On October 25, 2022, the Court issued an order dismissing the First Amended Complaint for failure to state a claim, with leave to amend.  (ECF No. 21.)  In the same order, the Court denied Plaintiff's motions (ECF Nos. 14 & 16) to supplement the pleadings in the First Amended Complaint.  (Id.)

On November 11, 2022, Plaintiff filed the Second Amended Complaint.  (ECF No. 24.) Also on November 11, 2022, Plaintiff filed a motion to supplemental the pleadings in the Second Amended Complaint pursuant to Rule 15(d).  (ECF No. 23.)

Plaintiff's Second Amended Complaint is now before the Court for screening, 28 U.S.C. 1915, and Plaintiff's motion to supplement the pleadings in the Second Amended Complaint is before the Court for ruling.  Local Rule 230(*l*).

## II.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken

as true, courts "are not required to indulge unwarranted inferences." <u>Doe I v. Wal-Mart Stores, Inc.</u>, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Iqbal</u>, 556 U.S. at 678-79; <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009).  While factual allegations are accepted as true, legal conclusions are not.  <u>Id.</u>  The mere possibility of misconduct falls short of meeting this plausibility standard.  <u>Id.</u>

## III.    SUMMARY OF SECOND AMENDED COMPLAINT

Plaintiff is presently incarcerated at Salinas Valley State Prison (SVSP) in Soledad, California.  The events at issue in the Second Amended Complaint allegedly occurred at Corcoran State Prison in Corcoran, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR).  Plaintiff names as defendants Correctional Officer (C/O) E. Watrous, C/O L. Mora, C/O Rendon, C/O Cooper, and Lieutenant M. Genseal (collectively, "Defendants").  A summary of Plaintiff's allegations follows:

On April 14, 2021, while executing his duty as Clerk to a 3C Facility third-watch Sergeant, Plaintiff was prevented from completing his assignment by Housing Unit 3 Floor Officer Defendant Watrous, who effected closure of the entry/exitway via communication with Control Booth Officer Mosqueda [not a defendant].  Plaintiff's assignment was to be notified by Housing Unit Staff of routine cell searches to be included in the Daily Activity Report.  After notifying Plaintiff of the cell searches, Defendant Watrous ordered Plaintiff to submit to a cursory search of his person.  Watrous then requested Plaintiff to submit to an unclothed body search without cause in front of unit residents and female Officer Mosqueda during practice of Ramadan, in violation of Plaintiff's Moslem faith and California Code of Regulations § 3287(b), which states in part:

> "An inmate is subject to an inspection of his or her person, either clothed
> or unclothed, when there is reasonable suspicion to believe the inmate may have
> unauthorized or dangerous items concealed on his or her person, or that he or she

3

may have been involved in an altercation of any kind.  Such inspections may also be a routine requirement into or out of high security risk areas. . ."  (ECF No. 24 at 3:18-26 (citing California Code of Regulations § 3287(b)).

Plaintiff sought cause for the request and Watrous recounted a previous encounter during which he resolved to disturb Plaintiff when afforded an opportunity to make a point, then said, "You're not leaving until you comply," before again ordering Plaintiff to disrobe, unsuccessfully. (ECF No. 24 at 4:3.)

Then Defendant Mora requested Plaintiff to submit to a cursory search, to which Plaintiff responded, "He just did that," indicating Watrous, to which Mora responded, "Now I'm asking." ECF No. 24 at 4:6-8.)  Plaintiff complied.  Defendant Mora then asked Plaintiff to disrobe "because I'm ordering you to," but Plaintiff refused and Mora enclosed Plaintiff within Housing Unit Lower-B Section shower for noncompliance.  Plaintiff was then placed in mechanical restraints, removed from the shower, and escorted to the Program Office by Defendants Rendon and Cooper, violating CCR § 3268.2(b) which provides that restraints may be used only "when transporting a person, directed by licensed health care clinicians, or presents through "history, present behavior, apparent emotional state" that a person may reasonably be perceived to "become violent or attempt to escape."  (ECF No. 24 at 4:21-26.)  Plaintiff asked why, and Defendants Rendon and Cooper, and a third officer, placed Plaintiff against the wall and forcibly removed his shoes and socks.  Defendant Rendon rubbed his hand across Plaintiff's bare feet, then secured Plaintiff in the holding cell.  Upon exiting, Rendon exclaimed, "Now that's how you shoe a horse!"  Plaintiff remained there for about an hour, barefoot and mechanically restrained before he was released and ordered to return to the housing unit.

On April 27, 2021, Plaintiff was issued a false Rules Violation Report (RVR) authored by Defendant Watrous, for Delaying a Peace Officer in the Performance of Duties, in retaliation for Plaintiff's refusal of the unclothed body search that violated the Fourth Amendment.

On May 11, 2021, Plaintiff appeared before Senior Hearing Officer Genseal for adjudication of the RVR.  As Senior Executive Officer, 3C Facility, and post-commander at the time of the incident, to whom rank and file officers reported and conferred, Defendant Genseal

was not competent to adjudicate the RVR as an impartial fact-finder, pursuant to CCR § 3320(h), due to his status as executive officer and/or watch commander with percipient knowledge during the foregoing event(s), which precludes staff "who observed, reported, classified, supplied supplemental reports to or investigated the alleged rule violation . . . or for any other reason have a predetermined belief of the inmate's guilt or innocence" from hearing the charges.  (ECF No. 24 at 5:26-6:2.)   Defendant Genseal prevented Plaintiff from presenting a defense and disregarded the California Code of Regulations stating, "When my officers say do something you do it."  (ECF No. 24 at 6:6-7.)  Defendant Genseal found Plaintiff guilty of Delaying a Peace Officer in the Performance of Duties and assessed Plaintiff 30 days loss of credit and administrative restrictions, compromising Plaintiff's October 21, 2023 Youth Offender Parole Suitability hearing and Plaintiff's October 20, 2023 minimum eligible parole suitability hearing date which is likewise subject to good time credits.  Watrous issued Plaintiff the infraction for Delaying a Peace Officer and not for failure to submit to a search, "which is a specific infraction for Plaintiff's failure to comply with unlawful order, precipitating the foregoing course of events."  (ECF No. 24 at 6:19-22.)

Plaintiff requests monetary damages, including punitive damages.

## IV.   RULE 15(d) – SUPPLEMENTAL PLEADINGS

On November 7, 2022, Plaintiff filed a motion to supplement the pleadings in the Second Amended Complaint.  (ECF No. 23.)

Federal Rule of Civil Procedure 15(d) provides for supplemental pleadings as follows:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d).

"Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed."  Doe v. Butte Cnty. Prob. Dep't, No. 220CV02248TLNDMC, 2022 WL 705616, at *2 (E.D. Cal. Mar. 9, 2022) citing Cabrera v.

City of Huntington Park, 159 F.3d 374, 382 (9th Cir. 1998) (per curiam)).

A party may only file a supplemental complaint with leave of court.  Fed. R. Civ. P. 15(d). "In deciding whether to permit a supplemental pleading, a court's focus is on judicial efficiency." Id. (quoting Yates v. Auto City 76, 299 F.R.D. 611, 613 (N.D. Cal. 2013) (citing Planned Parenthood of S. Az. v. Neely (Neely), 130 F.3d 400, 402 (9th Cir. 1997)). The use of supplemental pleadings is "favored" because it enables a court to award complete relief in one action "to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted."  Id. (quoting Keith v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988) (citing New Amsterdam Cas. Co. v. Waller, 323 F.2d 20, 28–29 (4th Cir. 1963), cert. denied, 367 U.S. 963 (1964); Yates, 299 F.R.D. at 613 (citation omitted)). However, even though supplemental proceedings are "favored," they "cannot be used to introduce a separate, distinct, and new cause of action." Id. (citing Neely, 130 F.3d at 402 (citations omitted)).  Rather, matters newly alleged in a supplemental complaint must have "some relation to the claims set forth in the original pleading."  Id. (quoting Keith, 858 F.2d at 474.

"The legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as the standard for granting or denying a motion under Rule 15(a)." Id. (quoting Yates, 299 F.R.D. at 614.)  Courts commonly apply the five Foman factors to Rule 15(d) motions: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure of previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment.  Id. (citing Lyon v. U.S. Immigr. & Customs Enf't, 308 F.R.D. 203, 214 (N.D. Cal. 2015) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); Natural Resources Defense Council v. Kempthorne, No. 1:05-cv-01207-LJO GSA, 2016 WL 8678051 (E.D. Cal. Apr. 22, 2016)). Among these five factors, "it is the consideration of prejudice to the opposing party that carries the greatest weight."  Id. (quoting Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003)).  "Absent prejudice or a 'strong showing' of any other Foman factor, there is a presumption in favor of granting leave to supplement."  Id. (quoting Lyon, 308 F.R.D. at 214 (citing Eminence Capital, LLC, 316 F.3d at 1052)).  Supplementation should be permitted where

doing so would serve Rule 15(d)'s goal of judicial efficiency, and a court should assess whether an entire controversy can be settled in one action.  Id. (citing see Neely, 130 F.3d at 402).

> **A.**    **Plaintiff's Motion to Add Supplemental Pleadings (ECF No. 23.)**

Plaintiff proposes adding several more Defendants and new claims to the Second Amended Complaint based on events that occurred after the original Complaint was filed. Plaintiff seeks to add 9 new defendants: Ken Clark (Warden), Sergeant R. Rivera, C/O E. Puga, C/O M. Liddle, C/O A. Luviano Martinez, Sergeant Brazelton, E. Silva (Associate Warden), K. Matta (Correctional Counselor II), and Captain Johnson.  A summary of Plaintiff's proposed supplemental allegations and claims follow:

> On May 11, 2021, Plaintiff filed an administrative grievance comprising matters constituting the instant action.  Therefrom, Defendant Genseal administered an ongoing campaign of retaliation and harassment, via command chain influence as third watch post commander consistent with Green Wall or Code of Silence practices, unimpeded by Defendant Clark despite notice of Plaintiff's administrative grievances.

> Commencing May 24, 2021, Plaintiff was prevented from attending his assignment as Clerk to a third-watch Sergeant pursuant to orders of executive officers, according to Housing Control Unit 3C01 Control Booth Officer Craig [not a defendant] and Floor Officer Sanchez [not a defendant].

> On or about June 24 or 29, 2021, after Plaintiff had been absent from his assignment since May 21, Plaintiff encountered the assignment supervisor Sergeant Garza, and conveyed communication from Craig and Sanchez regarding nonattendance.  Garza responded, "They may be acting under order of the Lieutenant," i.e. Genseal, who may have been informed Plaintiff had been refusing assignment.

> On or about August 18, 2021, Plaintiff attended his assignment after weeks of absence and was confronted by Defendant Genseal claiming Plaintiff was said to have refused attendance, after which Officer Sanchez instructed Plaintiff to

include his name in the administrative grievance by which Plaintiff would repudiate Genseal's assertion.

On November 9, 2021, while at his assignment, Plaintiff was standing by with leave from then-supervisor Defendant Sergeant Rivera on 3C Facility West Yard.  Plaintiff was accosted by Control Yard Tower Officer Defendant Puga under pretext of inducement by Defendant Rivera.  Puga subsequently issued a false Rules Violation Report for Plaintiff's failure to meet work expectations. Puga recounted monitoring Plaintiff's every move, commencing with his appearance for assignment from Housing Unit #C01 and conferring with Defendant Genseal prior to initiating interaction with Plaintiff, despite an active East Yard.  After the 4:30pm institutional count, Plaintiff sought out Defendant Rivera to report attendance for his assignment, following information that Rivera was en route touring 3C Facility Housing Units.  Plaintiff encountered Floor Officer Liddle at the building entrance and Plaintiff was told that Rivera was not there.  Plaintiff was given information about cell searches for inclusion in the Daily Activity Report before continuing on his quest.  Plaintiff subsequently received a Rules Violation Report issued by Defendant Liddle for "Out of Bounds."

On November 15, 2021, Plaintiff was found guilty of both RVRs by Defendant Rivera who acted as Senior Hearing Officer (SHO).  Rivera was incompetent due to percipient knowledge per CCR § 3320(h) as assignment supervisor and Plaintiff's absence due to Covid quarantine commencing November 14, 2021.  Even so, Plaintiff was found guilty of the RVR, thereby terminating Plaintiff's assignment.

On March 20, 2022, Plaintiff was ordered from his cell by Defendant Luviano Martinez purportedly for a random cell search.  Plaintiff exited the cell and complied with instructions to enter the "Lower B" shower where he was secured therein.  Defendant Luviano Martinez asked Plaintiff to disrobe, and

Plaintiff requested clarification whether he was performing a random search. Luviano Martinez indicated it was a random search but refused to give cause for Plaintiff to disrobe. Plaintiff was then removed to the Program Office where Defendant Brazelton conducted an unlawful unclothed body search of Plaintiff after stating that officers don't need a reason to strip search inmates. Brazelton was then instructed by Defendant Genseal to order Luviano to issue Plaintiff an RVR for Willingly Delaying a Peace Officer.

On April 26, 2022, Defendant Genseal, as SHO, found Plaintiff guilty of the RVR and assessed a loss of 90 days credits and other administrative findings. Genseal was incompetent as SHO because he had ordered the RVR to be issued and because of his ongoing hostility toward Plaintiff due to Plaintiff's exercise of administrative remedy. Also, Defendant Genseal disregarded the California Code of Regulations.

On May 17, 2022, in retaliation for Plaintiff filing an administrative grievance regarding the foregoing conduct, Plaintiff was removed to administrative segregation purportedly for Possession of Deadly Weapon discovered in Plaintiff's housing quarters by Defendant Luviano.

On May 20, 2022, Plaintiff was assessed a Minimum Eligible Release Date (MERD) for a projected SHU term, pending D.A. referral for Possession of a Deadly Weapon. But then Plaintiff appeared before Defendants Silva, Matta, Johnson, et al., and was ordered held in segregation post MERD pending transfer to a more secure facility, in retaliation for exercise of administrative remedies and pending litigation. Plaintiff was transferred to SVSP.

Plaintiff seeks to bring new claims for retaliation under the First Amendment based on the issuance of false RVRs under the First and Eighth Amendments, for failure to protect in violation of the Eighth Amendment, for violation of due process, for an unreasonable search under the Fourth and Eighth Amendments, and for adjudication of RVR in violation of the Fifth and Sixth Amendments.

### B.   <u>Discussion</u>

As discussed above, Federal Rule of Civil Procedure 15(d) is a tool of judicial economy and convenience, and the Court finds that these interests would not be served by allowing Plaintiff to supplement his Second Amended Complaint given the allegations in the proposed supplemental pleadings set forth above.

Plaintiff, by conjecture, attempts in his motion for supplemental pleadings to connect the claims contained in his supplemental pleadings to the claims contained in his SAC by alleging those acts were essentially done in retaliation by defendant Genseal for the grievance Plaintiff filed on May 11, 2021, which concerns the RVR hearing held on that same day. (Doc. 23, p3). However, the proposed supplemental pleadings assertions of retaliatory acts are much too conclusory, conjectural and attenuated from his claims in the SAC to be allowed to be added to the SAC.   Plaintiff asserts retaliatory acts in his proposed supplemental pleadings on the following dates: May 24, 2021; June 24 or 29 [2021]; August 18, 2021; Nov. 9, 2021; Nov. 15, 2021; March 20, 2022; May 17, 2022; and May 26, 2022.   As one example, in the June 24 (or 29) event Plaintiff sets forth  an unsubstantiated hearsay statement allegedly made by defendant Genseal that Plaintiff was refusing assignment (Doc # 23 p 3).

Just as importantly, Plaintiff's Second Amended Complaint (SAC) brings claims only against **defendants Watrous, Mora, Rendon, Cooper, and Genseal.  However, the only Defendant named in both the Second Amended Complaint (SAC) and the proposed supplemental pleadings is Defendant Lieutenant Genseal.  The proposed supplemental pleadings requests permission to add 9 new defendants, Clark, Silva, Matta, Johnson, Rivera, Brazelton, [Pugo], Liddle and Martinez.   Moreover, Plaintiff asserts that** on May 11, 2021, following his RVR hearing which also occurred on May 11, he filed an administrative grievance concerning the May 11 RVR hearing and that thereafter Defendant Genseal administered an ongoing campaign of retaliation and harassment by enlisting the assistance of, or directing the retaliatory acts, of above named 9 defendants.  Interestingly, the SAC Plaintiff alleges that it was defendant Watrous who issued the relevant RVR, not defendant Genseal, who was only the hearing officer at the May 11 RVR hearing and who found Plaintiff guilty of the RVR.

In the end, even if Plaintiff were allowed to add the retaliation claim against Genseal contained in the supplement pleading, noting that the retaliation claim is the only thread that ties the allegations contained in the SAC with those in the proposed supplemental pleadings, it would ultimately prove futile because Plaintiff does not allege sufficient facts establishing that Genseal retaliated against him *because of* Plaintiff's May 11th grievance.[1]

Further, Plaintiff's other proposed new claims against defendants who are not named in the Second Amended Complaint, are for many incidents occurring after the initial Complaint was filed on October 5, 2021.  Allowing these claims to proceed in one suit would not serve either judicial economy or convenience. Moreover, adding these new claims to the Second Amended Complaint would violate Rule 18 of the Federal Rules of Civil Procedure, which bars Plaintiff from proceeding in one action with unrelated claims against different staff members.[2]

Based on the foregoing, the Court finds that in addition to futility, judicial economy and convenience would not be served by allowing Plaintiff to supplement the pleadings in his Second Amended Complaint as proposed.  Accordingly, the Court shall deny Plaintiff's motion to supplement the Second Amended Complaint.

## V.   PLAINTIFF'S CLAIMS IN THE SECOND AMENDED COMPLAINT

The Civil Rights Act under which this action was filed provides:

---

[1] To state a retaliation claim, an inmate must allege facts showing that a state actor took some adverse action against the inmate *because of* that inmate's protected conduct (e.g., *because* the inmate filed a prison grievance).  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  Plaintiff has not done so.

[2] "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.'  Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28 U.S.C. § 1915(g)."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

## A.        Heck Does Not Bar Plaintiff's Claims

As a threshold issue, the court must determine whether Plaintiff's claim is properly brought under 42 U.S.C. § 1983. Challenges to a prisoner's conditions of confinement must be brought through a civil rights action, but a habeas corpus petition under 28 U.S.C. § 2254 is the proper vehicle for a state prisoner's challenge to validity or length of his sentence. Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005); and see Nettles v. Grounds, 830 F.3d 922, 931 (9th Cir. 2016) (adopting "the Supreme Court's strong suggestion that a § 1983 action is the exclusive vehicle for claims that are not within the core of habeas."). A civil rights action is the "proper remedy" for a prisoner "who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody."

The Heck bar applies only "where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence." Holman v. Sauceda, No. 5:18-cv-00502-DOC (MAA), 2019 U.S. Dist. LEXIS 228232, at *20 (C.D. Cal. June 20, 2019) (quoting Wilkinson, 544 U.S. at 81 (emphasis in original)).  [I]f the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." Id. (citing Heck, 512 U.S. at 487 (emphasis in original)).

In Edwards v. Balisock, the Supreme Court applied Heck to bar a Section 1983 action involving allegedly defective prison disciplinary procedures resulting in a loss of good time credits. 520 U.S. at 648.  Id.  The Supreme Court later clarified in Muhammed v. Close that an inmate's § 1983 challenge to disciplinary proceedings are not barred by Heck if the challenge "threatens no consequence for [the] conviction or the duration of [the] sentence."  Id. (quoting 540 U.S. 749, 751, 124 S. Ct. 1303, 158 L. Ed. 2d 32 (2004) (per curiam)). If the invalidity of the disciplinary proceedings, and therefore the restoration of good time credits, would not necessarily affect the length of time to be served, then the claim falls outside the core of habeas and may be brought pursuant to Section 1983.  Id. (citing see Muhammed at 754-55.

Applying that limitation, the Ninth Circuit concluded in Nettles that Heck did not bar a California inmate serving a life sentence from bringing a Section 1983 challenge to a disciplinary

hearing that resulted in the loss of good time credits.  Id. (citing 830 F.3d 922, 934-36 (9th Cir. 2016) (en banc)).  Because Nettles was serving a life sentence, success on the merits of his claim "would not necessarily lead to immediate or speedier release because the expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole."  Id. (quoting Nettles at 934-35.

"Under California law, the parole board must consider '[a]ll relevant, reliable information' in determining suitability for parole.'  Id. (quoting Nettles at 935 (quoting Cal. Code Regs. Tit. 15, § 2281(b)).  "A rules violation is merely one of the factors shedding light on whether a prisoner 'constitutes a current threat to the public safety."  Id. (quoting Nettles at 935 (quoting In re Lawrence, 44 Cal.4th 1181, 1191, 82 Cal. Rptr. 3d 169, 190 P.3d 535 (2008)).  The parole board may deny parole "on the basis of any of the grounds presently available to it."  Id. (quoting Nettles at 935 (quoting Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003)).  Thus, "the presence of a disciplinary infraction does not compel the denial of parole, nor does an absence of an infraction compel the grant of parole."  Id. (quoting Nettles, 830 F.3d at 935).

Here, Plaintiff is serving an indeterminate life sentence.[3]  Therefore, similar to the plaintiff in Nettles, success on the merits of Plaintiff's claims would not *necessarily* lead to an immediate or speedier release because it would not necessarily lead to the grant of parole.  See Nettles, 830 F.3d at 934-35.  As such, this lawsuit "threatens no consequence for [Plaintiff's] conviction or the duration of his sentence," and Heck does not bar Plaintiff's claims.  Muhammed, 540 U.S. at 751.

### B.    Retaliation – First Amendment Claim

Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation.  Silva

---

[3] On December 2, 2021, Plaintiff notified the Court in his response to the Court's order to show cause that he is serving an indeterminate term of twenty-six years to life. (ECF No. 10 at 2:16-22.)

v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see also Short v. Sanzberro, No. 1:09-cv-00996-OWW-GSA PC, 2009 WL 5110676, at *5 (E.D. Cal. Dec. 18, 2009) ("Civil detainees are protected from retaliation by the First Amendment."); see Herrick v. Quigley, No. 3:15-cv-05016-RBL-KLS, 2016 WL 7324288, at *9 (W.D. Wash. Nov. 2, 2016) ("Retaliation is not proven by simply showing that a defendant . . . took adverse action after he knew that the plaintiff prisoner had engaged in constitutionally protected activity.")

The First Amendment protects the right of a prisoner to file a prison grievance against prison officials. Rangel v. LaTraille, No. 1:10-CV-01790-AWI, 2014 WL 4163599, at *8–9 (E.D. Cal. Aug. 20, 2014), report and recommendation adopted, No. 1:10-CV-01790-AWI, 2014 WL 5483752 (E.D. Cal. Oct. 29, 2014) (citing Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir.2003). However, protests that involve direct confrontation with prison officials enjoy limited constitutional protection due to the danger of a prison disturbance. Id. (citing Nunez v. Ramirez, 2010 WL 1222058, *5–6 (S.D.Cal. Mar.24, 2010); Johnson v. Carroll, 2012 WL 2069561, *34 (E.D.Cal. Jun.7, 2012) (findings and recommendations finding that prisoner's verbal challenge to search was not protected by First Amendment; prisoner's recourse for challenging search was to file an administrative grievance), adopted in full by Johnson v. Carroll, 2012 WL 3756483 (E.D.Cal. Aug.28, 2012)).

Even if characterized as a protest, a refusal to comply with a direct order is not subject to First Amendment protection. Id. (citing see, e.g., Cauthen v. Rivera, 2013 WL 1820260, *8–9 (E.D.Cal. Apr.30, 2013) (objection to outdoor search characterized by prisoner as a grievance by way of peaceful protest not protected; prisoner's conduct was an objection to a direct order in face-to-face confrontation and did not state a claim for retaliation).

15

Here, Plaintiff alleges that Defendant Watrous retaliated against him by issuing a false RVR report because of Plaintiff's refusal to submit to an illegal strip search. Plaintiff's protest against the unclothed body search was a direct, face-to-face confrontation with prison officials, with Plaintiff refusing to comply with repeated orders to submit to an unclothed body search. Plaintiff's refusal to comply with orders is not protected conduct under the First Amendment. Id. Inmates do not get to decide which orders they will obey and when they will obey them. Id. (citing Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984)).

Assuming *arguendo* that Plaintiff's refusal to comply was considered protected conduct, Plaintiff has not shown that Defendant's conduct failed to reasonably advance a legitimate penological purpose. See id. The CDCR's regulations prohibit conduct that disrupts the operation of the institution. Specifically, the regulations provide as follows: "Inmates . . . will not openly display disrespect or contempt for others in a manner intended to or reasonably likely to disrupt orderly operations within the institutions or to incite or provide violence." Id. (quoting Cal.Code Regs., tit. 15 § 3004(b)). Institutional security is a legitimate correctional goal. Id. (citing Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011)). Therefore, Plaintiff fails to state a cognizable retaliation claim against Defendant Watrous because Plaintiff did not show he was participating in protected activity.

Moreover, Plaintiff has not established a nexus between adverse actions by Defendant Watrous and Plaintiff's conduct in refusing the unclothed body search. Although Plaintiff claims that he was retaliated against, he has failed to demonstrate a causal nexus between the alleged retaliation and any constitutionally protected activity showing that the retaliatory act was done *because* of the protected activity. The mere statement that a Defendant "retaliated" against him or acted "in retaliation" is not sufficient to state a claim.

For these reasons, Plaintiff fails to state a claim for retaliation against any of the Defendants.

**C.   Due Process**

Prisoners, like other persons, generally may not be deprived of life, liberty, or property without due process of law. King v. Jauregui, No. 2:19-cv-04938-DOC (GJS), 2020 U.S. Dist.

16

LEXIS 181007, at *12-15 (C.D. Cal. Aug. 11, 2020) (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)). The range of liberty interests protected by the procedural due process requirement is not "infinite," and procedural due process guarantees apply only when a constitutionally protected liberty interest is at stake.  <u>Id.</u> (quoting <u>Ingraham v. Wright</u>, 430 U.S. 651, 672-73, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977); <u>see also</u> <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Liberty interests can arise from the Constitution itself or from an expectation or interest created by state law or policies. <u>Id.</u> (citing <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005); <u>Sandin v. Conner</u>, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)).

The Due Process Clause, of its own force, does not afford prisoners a constitutionally protected liberty interest in being free from conditions that fall within the sentence imposed on them, namely, that constitute the types of punishment characteristically suffered by a person convicted of crime, nor does it "protect every change in the conditions of confinement having a substantial adverse impact on the prisoner."  <u>Id.</u> (quoting <u>Sandin</u>, 515 U.S. at 478). Rather, "States may under certain circumstances create liberty interests which are protected by the Due Process Clause . . . [b]ut these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> (quoting <u>Sandin</u> at 483-84).  For example, the Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466-68 (1983); <u>see also</u> <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the

SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

**May 11, 2021 Disciplinary Hearing**

At this hearing Plaintiff was found guilty of "Delaying a Peace Officer in the Performances of Duties," assessing him "30 days loss of credit and administrative restrictions." (ECF No. 24 at 6:8-9.)[4]

Plaintiff does not have a protected liberty interest in the loss of good time credits. Gibbs v. Sanchez, No. CV 16-9013-RGK (PLA), 2019 WL 3059579, at *7 (C.D. Cal. Apr. 26, 2019), report and recommendation adopted, No. CV 16-9013-RGK (PLA), 2019 WL 4266518 (C.D. Cal. June 21, 2019) (quotation marks omitted).  To be sure, following Sandin, the Ninth Circuit has held that a state can create a protected liberty interest in a shortened prison sentence resulting from the loss of good time credits.  Id. (quotation marks omitted) (citing see, e.g., Gotcher v. Wood, 66 F.3d 1097, 1100 (9th Cir.1995), vacated and remanded on other grounds, 520 U.S. 1238, 117 S. Ct. 1840, 137 L.Ed. 2d 1045 (1997); see also Wolff, 418 U.S. at 557 (holding that inmate who faces loss of state-created liberty interest such as good time credits is entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated")). However, where, as here, a prisoner is serving a life sentence, "the loss of credits has never been held as a protectable liberty interest because the effect of the state action on the inmate's sentence is a key component of the [Sandin] inquiry, and a loss of credit has no effect on a life sentence." Gibbs 2019 WL 3059579, at *6 (quoting Davis v. Gonzalez, 2014 WL 658084, at *10 (C.D. Cal. Feb. 12, 2014); see also Sandin, 515 U.S. at 487 ("Nor does [the prisoner's] situation present a case where the State's action will inevitably affect the duration of his sentence.")).

---

[4] Plaintiff also alleges that the loss of credits later compromised his October 20, 2023 minimal eligible parole suitability hearing date and his October 21, 2023 Youth Offender Parole Suitability hearing.  (ECF No. 24 at 6:10-14.)

As for the additional administrative restrictions imposed on Plaintiff as part of his guilty conviction, Plaintiff has not alleged that any of the restrictions imposed an atypical or significant hardship on him.  Moreover, the Supreme Court has concluded that prisoners have no liberty interest in not losing privileges.  <u>See</u> <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 323, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

Based on the foregoing, the Court finds that Plaintiff has failed to establish the existence of a liberty interest for which due process protection is sought, and therefore Plaintiff fails to state a claim for violation of due process.

**False Reports**

Plaintiff alleges that Defendant Watrous wrote a false report against him.  This allegation, even if true, does not raise a constitutional claim, because there is no due process right to be free from false disciplinary charges.  The falsification of a disciplinary report does not state a standalone constitutional claim.  <u>Canovas v. California Dept. of Corrections</u>, 2:14-cv-2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); <u>see</u> <u>e.g.</u>, <u>Lee v. Whitten</u>, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012).  Prisoners do not have a liberty interest in being free from false accusations of misconduct.  This means that the falsification of a report, even when intentional, does not alone give rise to a claim under § 1983.  <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); <u>Buckley v. Gomez</u>, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (stating that "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports[ ]").

There are, however, two ways that an inmate who has been subjected to a false disciplinary report can state a cognizable civil rights claim: (1) when the prisoner alleges that the false disciplinary report was filed in retaliation for his exercise of a constitutional right, and (2) when the prisoner alleges that she was not afforded *procedural* due process in a proceeding concerning a false report. (<u>Gilbert v. Perez</u>, (E.D.Cal. Mar. 28, 2023) 2023 U.S.Dist.**LEXIS** 53875, at *9-10.) (citing <u>see</u> <u>Hines v. Gomez</u>, 108 F.3d 265, 269 (9th Cir. 1997) ("[T]his court

has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns."); Freeman, 808 F.2d at 951 (holding that the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural protections . . . are provided."); see also Ellis v. Foulk, No. 14-cv-0802 AC P, 2014 U.S. Dist. **LEXIS** 131831, 2014 WL 4676530, at *3 (E.D. Cal. Sept. 18, 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process requirement[] . . . .'") (quoting Hanrahan, 747 F.2d at 1140)).

Neither of these two ways to state a claim based on a false report is applicable here. As discussed above in this order, Plaintiff has not stated a cognizable retaliation claim against any of the Defendants. Nor has he alleged sufficient facts to state a procedural due process claim against Defendant Genseal for Genseal's conduct at the May 11, 2021 disciplinary hearing (see below).

### D.   Procedural Due Process

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir 2003). When a liberty interest exists, the constitutional due process a prisoner must receive encompasses: (1) 24 hour advanced written notice of the charges against him, (2) a written statement from the factfinder which identifies the evidence relied upon and the reasons for the action taken, (3) an opportunity to call witnesses and present documentary evidence in his defense when doing so will not be unduly hazardous to institutional safety or correctional goals, (4) assistance at the hearing if he is illiterate or the matter is complex, and (5) a sufficiently impartial factfinder.  (see, Singleton v. Hernandez, 2019 US Dist Lexis 25301 (quoting Wolff, 418 US at 563-66, 570-71)).

First, Plaintiff alleges that Defendant Genseal was not an impartial fact-finder at the hearing pursuant to California regulations (CCR § 3320(h); however, violations of state prison rules and regulations, without more, do not support claims under § 1983.  Ove v. Gwinn, 264

F.3d 817, 824 (9th Cir. 2001); <u>Sweaney v. Ada County, Idaho</u>, 119 F.3d 1385, 1391 (9th Cir. 1997). Only if the events complained of rise to the level of a federal statutory or constitutional violation may Plaintiff pursue them under § 1983. <u>Patel v. Kent School Dist.</u>, 648 F.3d 965, 971 (9th Cir. 2011); <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002). Here,  Plaintiff has not alleged facts supporting, other than with conclusory supposition, or reference to CCR 3320 (h), a  claim that Defendant Genseal's impartiality at the hearing affected Genseal's finding that Plaintiff was guilty of "Delaying a Peace Officer in the Performances of Duties."  Therefore, Plaintiff fails to state a cognizable claim that Defendant Genseal was not an impartial fact-finder at the hearing.

Secondly, Plaintiff alleges that Defendant Genseal did not allow him to present a defense at the hearing, and that Genseal disregarded the California Code of Regulations stating, "When my officers say do something you do it."  (ECF No. 24 at 6:6-7.)  Again, violations of California regulations, without more, do not support a claim under § 1983, and Plaintiff's conclusory allegation that he was not allowed to present a defense, unsupported by facts explaining what exactly Defendant Genseal did to prevent Plaintiff from offering a defense, is insufficient to state a claim.  Therefore, Plaintiff fails to state a procedural due process claim.

**E.** **<u>Violations Of State Regulations</u>**

Plaintiff alleges that Defendant Genseal disregarded the California Code of Regulations Plaintiff when he officiated at Plaintiff's disciplinary hearing.  As stated above, violations of state prison rules and regulations, without more, do not support any claims under § 1983. <u>Ove</u>, 264 F.3d at 824; <u>Sweaney v. Ada County, Idaho</u>, 119 F.3d 1385, 1391 (9th Cir. 1997).

Plaintiff alleges that Defendants violated various provisions of the California Code of Regulations, such as:  CCR § 3287(b) (Body Search); CCR § 3268.2(b) (Restraints); CCR § 3320(h) (Impartial Fact Finder).  These cites correspond with California regulations under Title 15, and there is no independent cause of action under 42 U.S.C § 1983 for a violation of Title 15 regulations. <u>See</u>, <u>e.g.</u>, <u>Parra v. Hernandez</u>, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); <u>Chappell v. Newbarth</u>, No. 1:16-cv-01378-OWW-

WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations); also see Thurman v. Bayshore Transit Mgmt., Inc., 203 Cal.App.4th 1112, 138 Cal. Rptr. 3d 130, 146-47 (2012), *abrogated on other grounds by* ZB, N.A., and Zions Bancorporation v. Superior Court, 8 Cal.5th 175, 252 Cal.Rptr.3d 228, 448 P.3d 239 (2019) (statutory language or legislative history must clearly indicate an intent to create a private right of action)." Nible v. Fink, No. 19-55890, 828 F. App'x 463, 2020 WL 6441171, at *1 (9th Cir. Nov. 3, 2020) (unreported).

Therefore, Plaintiff fails to state a claim against any of the Defendants for violation of the California Code of Regulations.

### F.    Unclothed Body Search

Prisoners and pretrial detainees in institutional settings may be subjected to strip searches and body cavity searches if they are conducted in a reasonable manner.  See Bell v. Wolfish, 441 U.S. 520, 561, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).  The United States Supreme Court and the Ninth Circuit have held that routine visual strip searches do not unreasonably infringe on prisoners' constitutional rights.  Florence v. Board. of Chosen Freeholders, 566 U.S. 318, 328 (2012) (upheld, under the Fourth Amendment, a blanket strip search and visual body cavity search for detainees entering detention facilities to detect and deter contraband); Bell, 441 U.S. at 558-60 (found visual body cavity searches conducted after contact visits used to prevent prisoners' possession of weapons and contraband, even absent probable cause, reasonable under the Fourth Amendment); Michenfelder v. Sumner, 860 F.2d 328, 333-34 (9th Cir. 1988) (held that routine visual body cavity searches conducted in hallways did not violate the Fourth Amendment after situations where inmates had been presented with the opportunity to obtain contraband or a weapon); Rickman v. Avaniti, 854 F.2d 327 (9th Cir. 1988) (upheld prison policy requiring visual strip and body cavity searches every time administrative segregation prisoners left their cells).

The Fourth Amendment prohibits only unreasonable searches.  Bell, 441 U.S. at 558; Byrd v. Maricopa Cnty. Sheriff's Dep't, 629 F.3d 1135, 1140 (9th Cir. 2011), *cert. denied*, 131 S.Ct. 2964 (2011); Michenfelder, 860 F.2d at 332.  The reasonableness of the search is

determined by the context, which requires a balancing of the need for the particular search against the invasion of personal rights the search entails.  <u>Bell</u>, 441 U.S. at 558-59 (quotations omitted); <u>Byrd</u>, 629 F.3d at 1141; <u>Bull v. City and Cnty. of San Francisco</u>, 595 F.3d 964, 974-75 (9th Cir. 2010); <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1227 (9th Cir. 2010); <u>Michenfelder</u>, 860 F.2d at 332-34.  Factors that must be evaluated are the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.  <u>Bell</u>, 441 U.S. at 559 (quotations omitted); <u>Byrd</u>, 629 F.3d at 1141; <u>Bull</u>, 595 F.3d at 972; <u>Nunez</u>, 591 F.3d at 1227; <u>Michenfelder</u>, 860 F.2d at 332.

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'"  <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976) (citation omitted).  A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (citation omitted).

Here, Plaintiff's Fourth and Eighth Amendment claims fail because Defendants did not conduct an unclothed body search in the Second Amended Complaint.  Plaintiff was ordered to disrobe for an unclothed body search, but he objected and refused to disrobe eventually ending with only Plaintiff's shoes and socks being removed (Doc # 24, pg 5).  Since Plaintiff was not subjected to *any* unclothed body search, there was no *unreasonable* body search in violation of the Fourth or Eighth Amendments.

Plaintiff also alleges that his rights related to the practice of his religion were violated by Defendants' order that he submit to an unclothed body search.  However, this issue is moot for the same reason Plaintiff fails to state Fourth and Eighth Amendment claims pertaining to the unclothed body search -- Plaintiff was not subjected to an unclothed body search in the Second Amended Complaint.  Moreover, Plaintiff has not offered any reason that an order to submit to a strip search violates his religious rights.

Likewise, Plaintiff has not shown that he suffered any serious harm by being ordered to submit to an unclothed body search and therefore fails to state an Eighth Amendment claim.  A deprivation of "peace of mind" does not support a constitutional claim. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), and moreover, a mere threat to do an unconstitutional act does not create a constitutional wrong.  Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).  Finally, a prisoner may not bring a civil action for emotional or mental injury that he suffered while in custody without showing a physical injury. 42 U.S.C. § 1997e(e); Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002).

Therefore, Plaintiff fails to state a First, Fourth, or Eighth Amendment claim based on Defendants' conduct in ordering him to submit to an unclothed body search.

### G.   Excessive Force -- Eighth Amendment Claim

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992).  "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency."  Id. (internal quotation marks and citations omitted).  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident.  Id. at 9; see also Oliver, 289 F.3d at 628 (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  Id. at 9.  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind."  Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id. at 7.  "In determining whether the use of force was wanton and unnecessary, it

may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Here, Plaintiff alleges that Defendants Rendon and Cooper unlawfully removed his clothing (shoes and socks) using excessive force in violation of the Eighth Amendment. Plaintiff alleges that the two Defendants "forcibly" removed Plaintiff's shoes and socks, and that Rendon rubbed his hand across Plaintiff's bare feet before securing him in the holding cell. However, none of the conduct alleged against either Defendant described by Plaintiff could be inferred or interpreted as "repugnant to the conscience of mankind" or "malicious and sadistic use of force to cause harm." Nor has Plaintiff alleged that he was injured. Therefore, Plaintiff fails to state a claim for use of excessive force in violation of the Eighth Amendment.

## VI.   ORDER, RECOMMENDATIONS, AND CONCLUSION

### A.   <u>Order</u>

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's motion (ECF No. 23) for leave to supplement the pleadings of the Second Amended Complaint, filed on November 7, 2022, is **DENIED**.

### B.   <u>Recommendations and Conclusion</u>

The Court finds that Plaintiff fails to state any cognizable claims in the Second Amended Complaint against any of the Defendants.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." However, the Court need not grant leave to amend where the amendment is futile. AmerisourceBergen Corp. v. Dialysis West, Inc., 445 F.3d 1132, 1136 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). Plaintiff has now filed three complaints without stating any cognizable claims upon which relief may be granted. The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend is futile and should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez

v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.      This case be dismissed, with prejudice, for failure to state a claim, without leave to amend; and

2.      The Clerk be directed to enter judgment and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **On or before June 27, 2023**, Plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  __**June 12, 2023**__          _____**/s/ Gary S. Austin**
                                 UNITED STATES MAGISTRATE JUDGE